IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. BAKER,<br><br>                  Petitioner,<br><br>vs.<br><br>WARDEN JAMES HAVILAND,<br><br>                  Respondent. | CASE NO. 3:20-cv-2334<br><br>DISTRICT JUDGE<br>JOHN R. ADAMS<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Pro se Petitioner William Baker filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Baker is in custody at the Allen Correctional Institution due to a journal entry of sentence in the case *State v. Baker*, Allen County Court of Common Pleas, Case No. CR2017-0118. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed.

### Summary of facts

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Third Appellate District summarized the facts underlying Baker's conviction as follows:

> {¶2} On April 7, 2017, AB, who is Baker's daughter, was not feeling well and went into her father's bedroom to tell Baker that she was feeling nauseous. Tr. 49. Ex. 6. AB later testified that her father, at this point, began rubbing her back while she was sitting on his bed. Tr. 50. She said that Baker then began rubbing her sides and then her stomach. Tr. 52. AB testified that Baker moved his hands under her clothing and placed his fingers into her vagina. Tr. 51. She said that Baker, who was not wearing clothes, rolled AB onto her back, took AB's clothes off, and penetrated her with his tongue. Tr. 55, 59. AB testified that, as her father was undertaking these actions, she had her hands on her face and was saying "no" repeatedly to her father. Tr. 56. AB stated that Baker then put her clothes back on her and told her not to tell anyone about what had happened. Tr. 58.
>
> {¶3} AB then went to school where she communicated to her boyfriend, TA, what Baker had allegedly done. Tr. 62-63. AB and TA told the school resource officer and the school guidance counselor what had happened. Tr. 89. Shortly thereafter, AB had a full medical examination at Lima Memorial Hospital. Tr. 134. Later that day, Detective Nate Music ("Detective Music") interviewed Baker. Tr. 241. During this interview, Baker stated that he had been drinking on the night of April 6, 2017, and indicated that he was unable to remember everything that transpired on the morning of April 7, 2017. Ex. 6. He did, however, state what he did remember from that morning. Ex. 6. This police interview with Baker was recorded and admitted at trial. Ex. 6.
>
> {¶4} On October 19, 2017, Baker was found guilty of all of the charges against him. Doc. 86-93. The trial court entered convictions for two counts of rape in violation of R.C. 2907.02(A)(2), (B) and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), (C)(1).

*State v. Baker*, No. 1-17-61, 2018 WL 4057035 (Ohio Ct. App. Aug. 27, 2018).

**Procedural background**

*1.    Trial court proceedings*

In May 2017, an Allen County Grand Jury indicted Baker on 2 counts of rape, 2 counts of sexual battery, 2 counts of unlawful sexual conduct with a

minor, and 2 counts of gross sexual imposition. Doc. 7-1 (Exhibit 1). Baker was represented by counsel, and the case proceeded to a jury trial. *Id*. at 10, 12 (Exhibits 3, 4).

After trial, the jury found Baker guilty on all counts in the indictment. Doc. 7-1, at 15–19 (Exhibit 5). Baker's attorney filed a motion to withdraw as counsel. *Id*. at 20 (Exhibit 6). The court granted the motion and appointed new counsel for Baker. *Id*. at 22, 23 (Exhibits 7, 8).

In December 2017, the court held a sentencing hearing. Doc. 7-1, at 24 (Exhibit 9). The court merged counts 1–3 with each other (rape, sexual battery, and unlawful conduct with a minor) and counts 4–6 with each other (rape, sexual battery, and unlawful conduct with a minor). *Id*. at 25. The state elected to proceed to sentencing on the two rape counts, and the court sentenced Baker to 9 years on each rape count and one year on each gross sexual imposition count, to run consecutively, for a total of 20 years in prison. *Id*. at 27. (Exhibit 9).

2. *Direct appeal*

In December 2017, Baker appealed to the Ohio court of appeals. Doc. 7-1, at 30 (Exhibit 10). In his brief, Baker, through new counsel, raised the following assignments of error:

1. The convictions are against the manifest weight of the evidence.

2. The defendant received ineffective assistance of counsel.

3

*Id.* at 38, 41 (Exhibit 11). On August 27, 2018, the Ohio court of appeals affirmed Baker's convictions and sentence. *Id.* at 84 (Exhibit 13).

### 3.  First federal habeas petition

On May 31, 2019, Baker, pro se, filed a federal habeas corpus petition under 28 U.S.C. § 2254.[1] Doc. 7-1, at 108 (Exhibit 15); *Baker v. Turner*, No. 3:19-cv-1247 (N.D.Ohio filed May 31. 2019). On June 28, 2019, the Court dismissed Baker's petition "without prejudice to [Baker] re-filing upon a demonstration that he has fully exhausted his state remedies."[2] Doc. 7-1, at 110.

### 4.  Motion to correct and modify sentence

On August 20, 2019, Baker filed a "Motion to correct and modify sentence" in the trial court. Doc. 7-1, at 173 (Exhibit 19). The same day, the court denied Baker's motion. *Id.* at 182–83 (Exhibit 20).

### 5.  Delayed Ohio Appellate Rule 26(B) application to reopen direct appeal

On October 16, 2019, Baker filed a delayed Ohio Appellate Rule 26(B) application to reopen direct appeal in the Ohio court of appeals. Doc. 7-1, at

---

[1]     Baker did not avail himself of the prison mailbox rule when he filed his first petition. *See Baker v. Turner*, No. 3:19-cv-1247, Doc. 1, at 15 (N.D. Ohio filed May 31, 2019).

[2]     The Court dismissed Baker's petition under Rule 4 of the Rules Governing Section 2254 Cases and Section 2255 Proceedings, which provides for preliminary review.

126 (Exhibit 17). In his brief, Baker argued that appellate counsel was ineffective for failing to raise the following claims on direct appeal:

> 1. The trial court erred in failing to hold that the offenses of rape and gross sexual imposition were allied offenses of similar import; requiring merger of the offenses for purposes of sentences.

> 2. The essential elements of force w[ere] insufficient to convict of rape under RC 2907.02 … as a matter of law.

*Id*. at 135, 138. On November 13, 2019, the Ohio court of appeals denied Baker's motion because it was untimely, Baker did not show good cause for his untimely filing, and his claims failed on the merits. *Id*. at 171–72 (Exhibit 18).

### 6.     *Motion for delayed appeal*

On January 27, 2020, Baker filed a notice of appeal and a motion for leave to file a delayed appeal to the Ohio Supreme Court. Doc. 7-1, at 98, 100 (Exhibits 14, 15). On March 31, 2020, the Ohio Supreme Court denied Baker's motion. *Id*. at 125 (Exhibit 16).

### 7.     *Second federal habeas corpus petition*

On October 2, 2020, Baker filed a federal habeas corpus petition under 28 U.S.C. § 2254.[3] Doc. 1. He raised the following grounds for relief:

> **Ground 1**: Petitioner was denied the fundamental fairness of trial and the due process right guaranteed by the Fourteenth Amendment of the United States Constitution when the trial court abused its discretion and denied his motion for Rule 29 acquittal for insufficient evidence.

---

[3]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988). Baker states that he placed his Petition in the prison mailing system on October 2, 2020. Doc. 1, at 15.

*Supporting Facts*: Petitioner exclaims that court abused it's discretion and denied him due process and a fair and impratial trial when DNA evidence lacked the inclusiveness to find guilt, and where testimony proved witness (victim) unreliable.[4]

**Ground 2**: Petitioner was denied his fundamental right to due process and a fair and effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

*Supporting Facts*: Petitioner avers that he was denied his guaranteed right to effective assistance of counsel when counsel made prejudicial and inflammatory comments in the presence of the jury during closing arguments that exclaimed Petitioner's guilt and of which he was unable to cure from the mind of jurors.

Doc. 1-1, at 1. The Warden filed a Return of Writ, Doc. 7, Baker filed a Traverse, Doc. 9, the Warden filed a Reply, Doc. 10, and Baker filed a Sur-Reply, Doc. 13.

**Law and Analysis**

*1.     Baker's Petition is time-barred and tolling principles do not excuse the time bar*

The Warden argues that Baker's petition is barred by the statute of limitations and that Baker is not entitled to tolling principles to excuse the time bar. Doc. 7, at 7–15.

*1.1     Baker's Petition is time-barred*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, provides a one-year limitations period in

---

[4]     Baker's grounds for relief are reproduced as written and have not been edited.

a habeas action brought by a person in custody from a state court judgment.

Under 28 U.S.C. § 2244(d)(1), the limitation period runs from the latest of—

>       (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

>       (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>       (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>       (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Baker does not dispute that section 2244(d)(1)(A) is the only section that applies to his case. Doc. 7, at 9; Doc. 9, at 5; Doc. 13, at 1–2. Baker's conviction became final on October 11, 2018. This is so because the Ohio court of appeals affirmed Baker's convictions and sentence on August 27, 2018, and Baker had 45 days—until October 11, 2018—to appeal to the Ohio Supreme Court. *See* Ohio S.Ct.Prac.R. 7.01. But Baker did not appeal.

Although Baker filed a motion for delayed appeal in the Ohio Supreme Court in January 2020, a motion for delayed appeal is an application for collateral review or postconviction relief; it is not part of *direct review*. *See Foster v. Bobby*, No. 07-CV-1303, 2010 WL 1524484, at *3 (N.D. Ohio Apr. 15, 2010) (collecting cases); *see also Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir.

2001). So the date that the Ohio Supreme Court denied Baker's motion for delayed appeal isn't the date that Baker's judgment became final, § 2244(d)(1)(A), and it doesn't re-start the statute of limitations, *Searcy*, 246 F.3d at 519.

The limitations period began running on October 12, 2018, the day after Baker's appeal was due, and expired one year later, on October 14, 2019. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (the statute of limitations begins running the day after the event or default). Baker filed his habeas petition on October 2, 2020, about a year too late.

### 1.2    *Tolling principles do not excuse the time bar*

The statute of limitations is tolled for any period in which a "properly filed" petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (quoting 28 U.S.C. § 2244(d)(2)). The statutory tolling provision does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (citation omitted).

Statutory tolling principles do not save Baker's petition from being time-barred. As explained above, the limitations clock started running on October 12, 2018, and expired on October 14, 2019. Baker's first federal habeas petition, filed in May 2019, does not toll the limitations period because, under 28 U.S.C.

§ 2244(d)(2), only *state* post-conviction or collateral review filings toll the limitations period. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Baker's motion to correct and modify his sentence was *properly filed* and stopped the clock on the day he filed it, August 20, 2019.[5] On that date, Baker's limitations period had run for 312 days. The trial court denied Baker's motion the same day he filed it, and Baker had 30 days to appeal. *See* Ohio R. App. P. 4. Baker didn't appeal, so the clock started running again on September 20, 2019, the day after his time to appeal expired. The clock ran out 53 days later, on November 12, 2019.

Baker's October 2019 delayed Ohio Appellate Rule 26(B) application to reopen doesn't toll the limitations period. Because the Ohio court of appeals rejected Baker's application as untimely, Doc. 7-1, at 171, it wasn't *properly filed* under section 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (because an untimely filing is not *properly filed* under section 2244(d)(2), it doesn't toll the limitations period). The fact that the Ohio court of appeals also wrote that Baker's application failed on the merits, as an alternative reason for rejecting it, does not change that outcome. *Id.*

---

[5]     The Warden submits that Baker filed his motion to correct and modify sentence on August 15, 2019. Doc. 7, at 11. That's the date that Baker certified that he served the state with the motion. Doc. 7-1, at 180. But the Ohio courts don't use the *prison mailbox rule*, *State ex rel. Tyler v. Alexander*, 555 N.E.2d 966, 967 (Ohio 1990), and the trial court deemed Baker's motion filed the day the court received it—August 20, 2019, Doc. 7-1, at 182. *See also Vroman*, 346 F.3d at 603.

Finally, Baker's January 2020 motion for leave to file a delayed appeal to the Ohio Supreme Court doesn't toll the limitations period because the limitations period had already expired when Baker filed it. *Vroman*, 346 F.3d at 602.

Petitioners may also be entitled to "equitable tolling" when they have been "pursuing [their] rights diligently" and "some extraordinary circumstance" prevented them from timely filing their habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418). Petitioners bear the burden of "persuading the court" that they are entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Baker argues that he is entitled to equitable tolling because appellate counsel never told Baker that the Ohio court of appeals affirmed Baker's convictions in August 2018. Doc. 9, at 3, 6; Doc. 13, at 2–3. Baker states that on May 1, 2019, he sent a letter to the clerk of courts asking about his appeal. Doc. 9, at 3. Baker received a reply letter on May 13, 2019, and a copy of the Ohio court of appeals' August 2018 decision. *Id*.

Even if I credit Baker's story and start the limitations period on May 14, 2019, the day after Baker received the letter, his petition is still time-barred. On August 20, 2019, the clock stopped for 30 days while Baker's motion to correct and modify sentence was pending and the appeal time ran out. That pushes the limitations period out until June 15, 2020. Meanwhile, the clock stopped again, on January 27, 2020, when Baker filed a motion for leave to file

a delayed appeal to the Ohio Supreme Court. The court denied Baker's motion on March 31, 2020, so that adds another 64 days to the limitations period. But 64 days after June 15, 2020, is August 18, 2020. Baker filed his Petition on October 2, 2020—still too late. Although Baker asserts that he didn't understand the legal process, Doc. 9, at 12, "ignorance of the law, even for an incarcerated *pro se* petitioner, 'is not sufficient to warrant equitable tolling.'"[6] *Harvey v. Jones*, 179 F. App'x 294, 299 (6th Cir. 2006) (citing *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004)).

Finally, a claim of "actual innocence" may overcome the one-year statute of limitations if the petitioner "demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495–96 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual

---

[6]     When this Court dismissed Baker's first federal habeas petition for Baker's failure to exhaust the claims in state court, the Court explained, "[o]n its face, the Petition indicates that the Petitioner has not presented the claims he seeks to raise in the Ohio Supreme Court." Doc. 7-1, at 109. But instead of heeding this advice and promptly presenting his claims to the Ohio Supreme Court, Baker waited another 7 months, during which time he submitted 2 different filings to the lower courts. And after the Ohio Supreme Court denied his motion, he waited another 6 months to file his Petition.

innocence, not mere legal insufficiency." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The Supreme Court underscored that "the miscarriage of justice exception ... applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schulp*, 513 U.S. at 329). The timing of an actual innocence claim can "seriously undermine the credibility" of the claim, if a petitioner presents it after a period of "[u]nexplained delay." *Id.* at 399–400.

In support of his contention that he is actually innocent, Baker recites the testimony given at trial and claims that the "evidence used to convict him was wholly insufficient." Doc. 7, at 18. That testimony is neither "*new* reliable evidence" nor evidence "that was *not* presented at trial." *Schulp*, 513 U.S. at 324 (emphasis added). So Baker has not presented a cognizable claim of actual innocence, and his Petition remains time-barred.

### 2. *Baker's grounds for relief are also procedurally defaulted*

The Warden argues that, even if the petition is not time-barred, Baker's grounds for relief are procedurally defaulted. Doc. 7, at 27–30, 38–40. Under AEDPA, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional

claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

 1. *Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v.*

*Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).

  2. *Procedural default*

  Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

Here, Baker's grounds for relief are procedurally defaulted because Baker didn't timely appeal to the Ohio Supreme Court the Ohio court of appeals' decision rejecting his claims. Although Baker filed a motion for delayed appeal in the Ohio Supreme Court, the Ohio Supreme Court denied his motion. When it did, it enforced a procedural bar. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (when the Ohio Supreme Court denies a motion for delayed appeal, it enforces a procedural bar). So Baker failed to present his

15

claims to the state courts and pursue them through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).

For *cause* to excuse his procedural default, Baker again argues that appellate counsel never told Baker that the Ohio court of appeals affirmed his convictions and sentence. Doc. 9, at 11–12. But ineffective assistance of appellate counsel can't serve as *cause* to excuse a procedural default if the ineffective assistance of appellate counsel claim is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Here, Baker never appealed to the Ohio Supreme Court the Ohio court of appeals' decision denying his Rule 26(B) application. So Baker's ineffective assistance of appellate counsel claim is itself procedurally defaulted and can't serve as *cause* to excuse the procedural default of Baker's underlying claim. *See id*.

And even if Baker's ineffective assistance of appellate counsel argument were sufficient to show *cause*, Baker can't show *prejudice*. To show *prejudice* on a claim that appellate counsel was ineffective for not notifying him of the Ohio court of appeals' decision on direct appeal, Baker must show that he filed a motion for delayed appeal in the Ohio Supreme Court within 45 days of learning about the Ohio court of appeals' decision. *See Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435 (6th Cir. 2006) (to show *prejudice* for appellate counsel's failure to notify a petitioner of an Ohio court of appeals' decision on direct appeal, there is a rebuttable presumption that the petitioner

16

does not show *prejudice* when the petitioner failed to seek an appeal within 45 days after learning of the Ohio court of appeals' decision). Baker claims that he learned about the Ohio court of appeals' decision on May 13, 2019, but he didn't file a motion for delayed appeal in the Ohio Supreme Court until January 27, 2020, more than 7 months later. So Baker doesn't overcome the presumption that he can't show *prejudice*. *See id.* (petitioner failed to show *prejudice* when he filed his motion for delayed appeal about 5 months after he discovered that the Ohio court of appeals affirmed his conviction).

Also, as explained above, Baker doesn't show actual innocence to overcome his procedural default. So Baker's grounds remain procedurally defaulted.

### Conclusion

For the reasons set forth above, I recommend that Baker's Petition be dismissed.

Dated: December 14, 2022

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).